THE MODERN WOODMEN OF AMERICA v. JOSEPH GERDOM *et ux.*

No. 14,332.    (82 Pac. 1100.)

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Seven Years' Absence—Presumption of Death.* In order that the presumption that a person once shown to have been alive continues to live may be overcome by the presumption of death arising from seven years' unexplained absence from home or place of residence, there must be a lack of information concerning the absentee on the part of those likely to hear from him, after diligent inquiry.

2. ———— *Lack of Information Necessary to Raise the Presumption.* The inquiry should extend to all those places where information is likely to be obtained, and to all those persons who in the ordinary course of events would be likely to receive tidings if the party were alive, whether members of his family or not; and in general the inquiry should exhaust all patent sources of information, and all others which the circumstances of the case suggest.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed December 9, 1905. Reversed.

*Truman Plantz,* and *D. C. Tillotson,* for plaintiff in error.

*Webb McNall, A. B. Quinton,* and *E. S. Quinton,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: Joseph Gerdom and Anna Gerdom sued the defendant, a fraternal society, upon a beneficiary certificate issued on August 26, 1890, to John B. Gerdom, one of its members, and containing the following recital:

"Neighbor John B. Gerdom . . . is, while in good standing in this fraternity, entitled to participate in its benefit fund to an amount not to exceed $2000, which shall be paid at his death to his father and mother, Joseph and Anna Gerdom, equally."

The petition, which was filed on March 16, 1904, alleged, among other things, that on August 15, 1895, John B. Gerdom left his father's house in the city of Topeka, Kan., which was his home, and started for the state of California; that he sent letters home to his father and the family until December, 1895, when nothing more was heard from him; that in August, 1896, Joseph Gerdom sent letters of inquiry to California and received an answer from an employer of John B. Gerdom that the last information received concerning him was in May, 1896; that plaintiffs had made diligent search for their son, but had been unable to find him or to hear of him since the date last mentioned. In view of these facts the petition asserted that John B. Gerdom died on or about May 31, 1903.

At the trial the defendant demurred to the plaintiffs' evidence. After an adverse ruling it elected to stand upon its demurrer, and from a judgment in favor of the plaintiffs it prosecutes error. The principal questions argued relate to the sufficiency of the

evidence to establish the death of John B. Gerdom, to the identity of the beneficiaries under the certificate, and to the insurable interest of the plaintiffs in the life of the assured, it being admitted that Joseph Gerdom is in fact the stepfather of John B. Gerdom.

For the purpose of establishing the fact that they had made proof of loss according to the requirements of the society, the plaintiffs introduced in evidence certain letters which had formed a part of the proof of loss submitted to the society before the action was commenced. These letters purport to have been written by John B. Gerdom to his sister, his "folks" and "friends," from Denver, Colo., and from Oakland, Cal. The earlier ones from California express a desire to come home, and ask that money be sent to him for that purpose. Later ones indicate that he obtained satisfactory employment in the *Tribune* office at Oakland. All of them give personal accounts of himself and express interest in the welfare of the persons to whom he wrote. The last one, which was dated at Oakland, Cal., on December 15, 1895, states that he is in good health, and indicates an intention to remain there for a while, because, as he says, the more he looks around the more he likes it.

In connection with the same branch of the case, a letter from the publishers and proprietors of the Oakland *Tribune,* dated August 28, 1896, and addressed to the plaintiff Joseph Gerdom, was introduced. This letter purports to reply to an inquiry relating to John B. Gerdom, states that he left the employ of the *Tribune* in February, 1896, but remained in Oakland for some time afterward, when he went first to Stockton and then to Merced, Cal., and that he left the last-named place with the statement that he was going back to Kansas City.

When these letters were admitted in evidence it was understood by court and counsel that they were offered as a part of the proof of loss. After they had been read the court made the following statement to

counsel, and asked the following questions of Joseph Gerdom, who was then on the witness-stand:

"The court: I am not sure whether this proof, in relation to these letters that have been introduced in evidence as being a part of the proof of loss—whether they can be used for the purpose of proving another fact or not, and, therefore, I want to inquire about that, so there will be no question about it. Did you hear anything from your son except as appears in these letters? Ans. Not a word; no.

"The court: Had any information at all? A. No, sir; not at all."

Further evidence disclosed that two brothers and a sister of John B. Gerdom were living in Topeka at the time of the trial. The remainder of the plaintiffs' proof consisted of evidence that John B. Gerdom was a single man, and that the defendant itself had advertised for him widely and unsuccessfully, after the suit had been commenced.

It is plain that the court could not, over seasonable objection, rightfully consider the letters referred to except for the single purpose of ascertaining if the preliminary steps had been taken to fix the defendant's liability. (*Commercial Travelers v. Barnes, ante,* p. 293.) But there is fair ground upon which to contend that the court did disclose a purpose to consider the letters and their contents, at least as a starting-point in the evidence upon the main issue, and that counsel for the defendant interposed no objection to the court's so doing. The matter is by no means clear, but for the purposes of this decision the record will be so interpreted. But, after making this concession, the court is unable to discover in the record sufficient evidence to support the allegations of the petition.

From the foregoing statement it is apparent that the substantial question under the pleadings and the evidence is, not if there is some evidence of death, but if those facts are established which the law insists must be proved in order to overcome the presumption of continued life. It is true that death may be proved

Modern Woodmen v. Gerdom.

by circumstantial evidence, and that absence for a considerable period of time is not indispensable in order to generate a satisfying conviction of the fact. (13 Cyc. 290, title "Death.") But in all such instances the death of the absent party must fairly be demonstrated by the circumstances of the disappearance. If, for example, in connection with other facts showing a want of motive for absence it should appear that the missing person was on a vessel which foundered, or a train which was wrecked, or engaged in some hazardous enterprise, or met with an accident which might be expected to result fatally, or was exposed to perils incompatible with his age or the state of his health, or was afflicted with a fatal disease, or was mentally infirm, or was suicidally inclined, belief in the fact of death might be forced upon the mind very soon after the disappearance. And in some cases the age, health, disposition, moral character, domestic relations, social rank and financial condition of one who suddenly disappears may themselves, without the aid of other circumstances, stifle all doubt that the person is dead. Such at least is the view of most of the courts of last resort, although the supreme court of Louisiana, in a case of absence apparently quite inexplicable except upon the assumption of death, very prudently observes:

"Disappearances such as his are not, unfortunately, of rare occurrence. Like instances are numerous; men apparently as happy in their domestic relations as he was, who in social position, in wealth, in the success of gratified ambition, were his equals, have been known to leave everything which is commonly looked upon as making life dear, to wander off among strangers and perils, and bury themselves for years, without leaving a trace behind them, in places and among people who were strange, and, it would be thought, repulsive to their tastes, their habits, and repugnant to those principles of honor and virtue which are the foundations of an honest domestic society." (*Succession of George Charles William Vogel,* 16 La. Ann. 139, 79 Am. Dec. 571.)

But in all the cases enumerated lapse of time is in a measure a subsidiary matter. There must be a sufficient opportunity for investigation and search, and after the expiration of a period ample for those purposes further lapse of time without tidings may confirm the inference of death. But the strength of the induction of death lies in the cogency of the circumstances of the disappearance, and not in the fact of absence long protracted.

No doubt considerations of this character impelled the attorneys for the plaintiffs to allege that the death of the assured occurred at the end of a period of seven years' unexplained absence, and hence at a time and place and under circumstances unknown to the plaintiffs and undiscoverable by them; and doubtless for the same reason no attempt was made to prove death as a fact. There is no suggestion in the evidence of any casualty occurring, or of any peril encountered, or of any paradox in the disappearance. On the other hand, when last heard of the missing party was a young, unmarried man, in good health, with the wander-lure upon him, trying his fortunes in a distant state, able to make his own way in the world, but whose circumstances had become such, or whose disposition toward his relatives had so far changed during his absence from home, that he no longer advised them, as he had been in the habit of doing, of changes in his affairs, of his plans, and of his movements from town to town. As to him the presumption of life continued, and a finding of death, except under the rules hereafter to be stated, would have contradicted both the pleading and the evidence.

In order that the presumption of life may be overcome by the presumption of death there must be evidence, not merely of absence from home or place of residence for the period of seven years, but there must be a lack of information concerning the absentee on the part of those likely to hear from him, after dili-

gent inquiry.    Greenleaf makes the following statement of the rule:

"Among the circumstances material to this issue are, the age of the party, his situation, habits, employ-ment, state of health, physical constitution; the place or climate of the country whither he went, and whether he went by sea or land; the facilities of communication between that country and his former home; his habits of correspondence with his relatives; the terms of intercourse on which he lived with them; in short, any circumstances tending to aid the jury in finding the fact of life or death.    There must also be evidence of diligent inquiry at the place of the person's last residence in this country, and among his relatives, and any others who probably would have heard of him, if living; and also at the place of his fixed foreign residence, if he was known to have had any."    (2 Greenl. Ev. [Lewis's ed.] § 278.)

Other law-books make similar statements.    It is conceived, however, that the character of the inquiry, the persons of whom it must be made and the place or places where it must be made are all to be determined by the circumstances of the case, with the obligation always upon the person who is to derive a benefit from the death of the absentee to exclude by the best evidence and with as much certainty as possible reasonable belief that he continues to live.

The social aspects of our civilization have been almost revolutionized since the presumption based upon the fact of seven years' unexplained absence was adopted.    The improbability that accident, injury, sickness or death could overtake John B. Gerdom without information of the fact reaching his family and friends is very great.    He scarcely could fail to find assistance in case of need among members of his own fraternity.    Hospital provision is now made almost everywhere for the relief of the sick and injured, and careful records of all cases are usually kept, including information concerning the patient himself and the circumstances necessitating his detention.    Police and

other court records, records of coroners' inquests, records of burial, and other criminal, casualty and mortuary statistics, collected and preserved in every well-populated state, make it difficult for any interested person to be ignorant of the facts to which they relate. The press gives daily attention to the publication throughout the country of news relating to accidents and crimes wherever they occur. The people generally are alert and well informed. Those of different sections of the country are intimate with each other, and the means of communication between even remote parts is easy, safe, and speedy. This being true, the presumption of death from absence cannot have the strong probability of fact as its basis which formerly supported it, and persons who for their own profit assume the burden of establishing in courts of justice that the death of an individual has occurred have little excuse for urging their own isolated ignorance of his fate or his whereabouts as the principal item of their proof.

Even under the rule as stated above, it was incumbent upon Joseph and Anna Gerdom to make a quest for tidings of their son among his former intimate friends in Topeka, if he had any; and certainly some inquiry of those officers or members of his lodge with whom he might have communicated concerning his dues or standing should have been made. All those persons who in the ordinary course of events would likely receive tidings if the party were alive, whether members of his family or not, should be interrogated, and the result of the inquiry should be given in evidence, or the testimony of the parties themselves should be produced at the trial. (*Hitz v. Ahlgren,* 170 Ill. 60, 48 N. E. 1068. See, also, 13 Cyc. 301.) Any word received by any one who might naturally be expected to hear at any time within the seven-year period destroys the presumption of death, and unless the resources of this field of information have been exhausted an allegation of death cannot successfully be

sustained. In this case Joseph Gerdom was the only witness produced to prove want of intelligence from the absentee at his former place of residence, and he spoke for himself alone. His coplaintiff, the young man's mother, and his brothers and sister, were not called. So far as the record shows John B. Gerdom may have continued to correspond with his sister for a number of years after leaving Oakland, and may even be in correspondence with her now; and this want of diligence on the part of the plaintiffs themselves in proving due inquiry could not be compensated by the defendant's advertisement.

But it is further to be observed that the evidence does not by any means exclude the idea that John B. Gerdom may have concluded to change his domicil. There is nothing to indicate that a purpose to return was bound up with his leaving, and his last word to his family was that he intended to stay in California, at least for some time, because he liked it there. Under these circumstances it was the clear duty of the plaintiffs to seek for information at the place where it was likely to be obtained. Indeed, their own instincts prompted them to do this, and the law cannot be satisfied with any less diligence.

"Where a person has left his home or place of residence and has neither been heard of nor from for a period of seven years, he may be presumed to be dead; but to raise this presumption there must be some proof of inquiry of the persons and at the places where news of him, if living, would most probably be had." (*Posey v. Hanson,* 10 App. Cas. [D. C.] 496.)

(See, also, 13 Cyc. 301*e*.)

And when the plaintiffs learned that their son had gone to Stockton and then to Merced, and had in contemplation a trip to Kansas City, their investigation should have been extended accordingly. Facts which are sufficient to put an interested party upon inquiry will constitute information regarding the existence of the absent one unless duly tested, and until reasonable

effort has been expended to exhaust all patent sources of information, and all others which the circumstances of the case may suggest, it cannot truthfully be asserted that diligent inquiry has been made. From what has been said it is apparent that the case is not one which may be disposed of on the ground that there is some evidence to support the court's finding. Definite measures which the plaintiffs were required to take were neglected. Facts indispensable to the presumption of death are absent. Without the aid of the presumption the allegation of death is unproved. Therefore, the demurrer to the evidence ought to have been sustained.

The evidence creates no uncertainty in respect to who the beneficiaries of the certificate sued upon may be. Joseph and Anna Gerdom are plainly the persons for whose benefit the contract was made.

The question of insurable interest is not involved in the case. The insured himself contracted directly with the insurer before the statute regulating the subject was enacted, and hence might lawfully designate as his beneficiary any one whom he saw fit to name. (3 A. & E. Encycl. of L. 959.)

The judgment of the district court is reversed, and the cause remanded for a new trial.

All the Justices concurring.