JANE CALDWELL, *Appellee*, V. THE MODERN WOODMEN
OF AMERICA, *Appellant.*

No. 17,832.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Disappearance of Insured — Pre-sumptions.* The principles pertaining to presumptions in cases of the disappearance and unexplained absence for seven years of a member of a fraternal order, stated in *Modern Woodmen v. Gerdom*, 72 Kan. 391, 82 Pac. 1100, and 77 Kan. 401, 94 Pac. 788, are followed.

2. ——— *Diligence in Making Inquiry for Assured.* A member of a fraternal order holding a beneficiary certificate left his home and family in this state, declaring his intention to go to California to find a new location, where his family should join him later. Letters were received by his wife at frequent intervals covering a period of five or six months, purporting to have been written by him at different places in California. The last of these letters, save one, was mailed at Stockton, Cal., and gave the information that the writer was sick with smallpox in a pesthouse there. About ten days later the last letter was received, saying that he had suffered a relapse and was still in the pesthouse. Afterwards his wife wrote several letters addressed to him at Stockton, but hearing nothing further from him, on November 2, 1902, inquired by letter of the postmaster at Stockton, and was informed that her letters had not been delivered. She then wrote for information to the mayor and also to the chief of police of that city; made inquiries of officers and members of the local camp of which her husband was a member, and of his father, brothers and sister, residing at various places in and out of the state; engaged attorneys, who published a notice in a newspaper at Stockton of his confinement in the pesthouse and disappearance, and through an officer of the local camp caused a like notice to be published in the official paper of the order, but obtained no tidings of her missing husband from these or any other source of information. After he had been absent for a considerable time she had a personal interview with the head consul of the defendant, to whom she related his disappearance and the information received about his sickness, and was advised by that officer to follow up all clues and keep up the insurance payments, and that the amount of her certificate would be paid in seven years from the disappearance, if her husband was not found. Upon these

facts and the circumstances showing his relations to his family, his age, occupation, financial standing and the like, it is held that there was sufficient evidence upon which to submit to the jury the question of diligence in making inquiries.

3. NEW TRIAL—*Excluded Evidence Must be Produced on Motion.* The rule that evidence excluded by the court must be produced on a motion for a new trial in order to obtain a review of the ruling excluding it, as declared in *Clark v. Morris,* 88 Kan. 752, 129 Pac. 1195, is followed.

4. —— *Absence of Insured for Seven Years—No Presumption as to Time of Death.* Where the presumption of death from unexplained absence for seven years without tidings applies, there is no presumption that the absentee died at any particular time within that period, but the time may be found by the jury from the circumstances of a particular case when they are of sufficient probative force to warrant the submission of the question.

Appeal from Sedgwick district court, division No. 1. Opinion filed March 8, 1913. Affirmed.

*Rodolph Hatfield,* of Wichita, *Truman Plantz,* and *George Perrin,* both of Rock Island, Ill., for the appellant.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The defendant appeals from a judgment rendered upon a beneficiary certificate issued in the year 1890 to W. H. Caldwell, a member of the order, payable to his wife (the plaintiff) at his death. It was admitted that all dues and assessments had been paid to the date of the trial. The petition alleged that Caldwell left his home in Hutchinson on the 7th of April, 1902, and had not been heard from since September of that year, when a letter was received by his wife informing her of his serious illness at Stockton, Cal. Other statements of the petition set out the inquiries made for the missing man and the failure to

Caldwell v. Modern Woodmen.

obtain information concerning him.   This action was
commenced April 2, 1910, in reliance upon the pre-
sumption of death.   The answer admits the issuance
of the certificate and good standing of the member,
but pleads false warranties in the application respect-
ing the age of his parents; also, the adoption of a
by-law which took effect September 1, 1908, providing
that no presumption of death should arise from ab-
sence or disappearance until the full term of the mem-
ber's expectation of life had elapsed.   The answer also
contained a general denial.

The evidence on the part of the plaintiff tended to
prove that the member was a well-known citizen of
Hutchinson.   He had been engaged at different times
as foreman of a salt plant, clerk in a hardware store,
farmer, thresherman, and grocer.   Just previous to his
leaving home he had been carrying on a grocery busi-
ness, which was turned over to his creditors.   He left
a wife and three children at his home in Hutchinson,
22, 17 and 15 years of age, respectively.   His relations
with his family were affectionate.   He declared his
intention to go to California to seek a new location,
where his family should join him.   His son accom-
panied him to the train.   Letters written by him were
received by his family at frequent intervals, averaging
one in each week, from several places in California.
One of these letters was from Sheridan, and was an-
swered by letter directed to him there.   In writing
from some of the other places he requested that an-
swers should not be sent until he wrote again.   He
wrote from Stockton, Cal., in September, 1902, say-
ing that he was sick in a pesthouse there with small-
pox, but was getting better.   Later, in October, he
wrote again that he had suffered a relapse and was
worse.   The family wrote several letters to him after-
ward, but, hearing nothing further, on inquiry about
him by letter to the postmaster at Stockton, on No-
vember 2, they learned that these letters remained un-

called for. Mrs. Caldwell then wrote to the mayor and also to the chief of police of Stockton, giving them the information she had received about his being in a pesthouse there. The chief of police answered, but gave no information of the missing man. She also wrote to her husband's father, then living in Nebraska, to his brother, living in another place in that state, and to his sister, living in Iowa, giving the facts concerning his absence and asking for information concerning him, but received none. She also consulted with another brother of her husband, living in this state, and with the consul and clerk of the camp at Hutchinson of which Caldwell was a member. One of these officers sought information from the head camp of the order, sending a photograph of the missing man. At the suggestion of the clerk of the local camp, a notice stating the facts about his disappearance and asking for information was published in the *Modern Woodman*, the official paper of the order, which circulates generally among its members. Inquiries were also made of members of the local camp. Mr. Caldwell's father came to Kansas and consulted with the plaintiff. None of these inquiries was effectual. A firm of lawyers at Hutchinson, at the plaintiff's request, addressed a letter to the mayor of Stockton, giving the facts of Mr. Caldwell's departure from home, of the letters giving information of his sickness in the pesthouse, and the failure to receive further tidings, and asking for information. This letter was published in full in a daily paper in Stockton in January, 1904, with brief editorial comments. No tidings or information of any kind was received from these inquiries or otherwise. In the same month Mrs. Caldwell had an interview with the head consul of the order, and told him of her trouble and the inquiries she had made, and asked for advice. He advised her to keep up the insurance, to follow up all clues, and that in seven years she would get her money if her husband was not found in that

time. In that conversation the head consul inquired about Mr. Caldwell's relatives, and was informed of the age of his father and that his mother was dead.

Depositions were taken by the defendant of the city health officer, the sextons of cemeteries and clerks of hospitals in Stockton, and evidence was adduced tending to show that Mr. Caldwell's death had not been reported to the proper officer, and that his name was not found upon the records of the county hospital where smallpox patients were cared for nor upon the records of interments in the principal cemeteries of the city. The defendant also offered evidence tending to prove that Mr. Caldwell left debts unpaid at Hutchinson.

It is contended that the inquiries made by the plaintiff were insufficient to overcome the presumption of continuing life by the presumption of death arising from seven years' unexplained absence. In order that the latter presumption may prevail there must be a lack of information concerning the absentee on the part of those likely to hear from him after diligent inquiry. The inquiry should extend to all places and persons where or from whom tidings would likely be received in the ordinary course of events; and in general the inquiry should exhaust all patent sources of information, and others which the circumstances suggest. (*Modern Woodmen v. Gerdom*, 72 Kan. 391, 82 Pac. 1100; *Renard v. Bennett*, 76 Kan. 848, 93 Pac. 261.) The rule, however, does not require absolutely conclusive proof. It is sufficient if the evidence warrants a finding that such inquiries have been made. In the second review of the Gerdom case it was said:

"Probably all efforts that would ordinarily be suggested, however painstaking or exhaustive, would still leave some source of information unexplored. The parents should only be held to the exercise of reasonable diligence in endeavoring to obtain tidings of their son. They were not required to prove conclusively that he was dead, but were bound to produce such evi-

dence as would fairly lead to the presumption of his death." (*Modern Woodmen v. Gerdom*, 77 Kan. 401, 405, 94 Pac. 788.)

It was argued in that case that inquiries should have been made of members of the lodge. Such inquiries were made in this case, and the efforts of officers and members in aid of the inquiry were sought and obtained. It is insisted, however, that further inquiries should have been made at Stockton. It is suggested that letters should have been written to the pesthouse from which Caldwell had written, or that personal investigation should have been made there. But the name of the pesthouse or institution with which it may have been connected was not stated in the letter, and Mrs. Caldwell did not have any knowledge about it. She was aided by experienced counsel in making the inquiries at Stockton, which were such as it is believed are ordinarily pursued. In any event it can not be held as a conclusion of law that she did not exercise reasonable diligence in this respect. Lack of diligence in making inquiries in other respects is also suggested, but upon a careful consideration of the efforts that were made, in the light of all the circumstances, it must be held that there was sufficient evidence to warrant the submission of the question of diligence to the jury upon proper instructions, which were given in accordance with the rules declared in the Gerdom cases.

The defendant alleged that in his application for membership Caldwell stated that his father was then living and was 82 years of age, and that his mother was also living and was 71 years of age; that the certificate was issued in reliance upon the statements made in the application, and contained a provision that if any of the statements were untrue the certificate should be null and void. It was further alleged that the father was not 82 years of age and was only 53 years old, and that the mother was not living, having died many years before. Other misrepresentations concerning brothers

and sisters were alleged. The application referred to was not set out in the pleadings and does not appear in the record.

To sustain the issue of misrepresentation the defendant offered the application in evidence, but it was rejected. This is alleged to be fatal error. While this ruling was included in the grounds presented for a new trial, a copy of the excluded evidence was not produced by affidavit or otherwise on the hearing of the motion, as required by section 307 of the civil code. The ruling, therefore, is not open to review. (*Clark v. Morris,* 88 Kan. 752, 129 Pac. 1195.)

Error is predicated upon the rejection of other evidence. The defendant produced the record of two chattel mortgages and other evidence tending to show that Caldwell left debts unpaid to the amount of about $500 when he left, and it was in evidence that he turned over his stock to his creditors. A writing was also produced, signed by Caldwell, as follows:

"This trouble is all my own. My wife is innocent of everything so don't blame her for I did it all myself."

The mortgagee was asked if he found out whether Caldwell owned the property (a threshing outfit) described in the mortgage; also whether he had attempted to get possession of the property. Objections were sustained. It is suggested that this was an effort to prove that Caldwell did not own the property or some of the property mortgaged, thus tending to prove a motive for leaving home. It was doubtless proper to prove indebtedness at that time, with other circumstances of his leaving, and this was done. It would seem that the jury were sufficiently informed of his financial condition, and the failure to require answers to these questions was immaterial. (Civ. Code, last clause of § 307, and § 581.) However, the defendant did not produce the excluded evidence on the motion

for a new trial, and, as we have already seen, the ruling can not be reviewed.

The by-law purporting to change the presumption of death in cases of disappearance is also relied upon as a defense. This by-law was attached to the answer, and was proven on the trial. While it was not produced in evidence on the motion for new trial, it was a part of the pleadings. In this respect it differs from the application above referred to. The member was 32 years. of age at the date of the certificate, and the limit of his expectation of life had not been reached when this. action was commenced. Nearly six years of the seven-year period involved in the presumption had expired when the by-law was adopted. Referring to this by-law the court instructed the jury in substance that actual death of the member might be proved, like any other fact, by direct or circumstantial evidence; that considering the circumstances of his disappearance, absence, age, health, character, domestic relations, social rank and financial condition and all other facts and circumstances of the case, if they found that he died before the passage of the by-law, it would not prevent a recovery.

Assuming that the by-law was valid and retroactive in its operation, as claimed by the defendant, two questions arise concerning it, viz., whether the foregoing instruction is a correct statement of the law, and whether the evidence sustains a finding that Caldwell died before September 1, 1908, when the by-law became effective. In an opinion delivered by Justice Brewer, in *Ryan v. Tudor,* 31 Kan. 366, 2 Pac. 797, it was said that a jury may infer death within less than seven years where besides unexplained absence there are other matters to show death. The opinion also refers to *Tisdale v. Insurance Co.,* 26 Iowa, 170, quoting therefrom:

" 'The death of an absent person may be presumed in less than seven years from the date of the last intelli-

gence from him, from facts and circumstances other than those showing his exposure to danger which probably resulted in his death. . . . Evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from, may be inferred, without regard to the duration of such absence.' " (*Ryan v. Tudor,* 31 Kan. 366, 370, 2 Pac. 797.)

In *Lancaster, Adm'r, v. Washington Life Ins. Co. of N. Y.,* 62 Mo. 121, it was stated as a general presumption that a person who has disappeared and has not been heard from shall be presumed to continue to live for seven years after he was last known to be alive—

"Unless within that period it shall be shown, that when last heard from he was in contact with some specific peril likely to produce death, or that he disappeared under circumstances inconsistent with a continuation of life, when considered with reference to those influences and motives which ordinarily control and direct the conduct of rational beings; in either of which cases the jury are at liberty to infer that death occurred at such time within seven years as from the testimony may seem most probable." (p. 128.)

It was said in the Gerdom case (72 Kan. 391, 82 Pac. 1100), that death may be proved by circumstantial evidence, and that absence for a considerable period of time is not indispensable in order to generate a satisfying conviction of the fact. Situations were referred to where the fact of death might be forced upon the mind very soon after the disappearance. Circumstances of health, disposition, moral character, domestic relations, social rank and financial condition were referred to as affording in some cases sufficient proof of death. (p. 395.) In Greenleaf on Evidence, 16th ed., section 41, after stating that the presumption of continuity of life ceases after an absence for seven

years without intelligence concerning the person, it is said:

"The presumption in such cases is, that the person is dead; but not that he died at the end of the seven years, nor at any other particular time. The time of the death is to be inferred by the jury from the circumstances."

"Death may be inferred from evidence of facts inconsistent with the theory of the existence of life. Thus it has been held that where an absentee when last heard of had just embarked on a vessel which has not since been seen or heard of and is long overdue, his death may be presumed, although the full period of seven years may not have elapsed since it sailed. So, if he was in a 'desperate state of health' . . . or if he was exposed to some specific peril likely to cause death, when last heard of, it may be presumed that he is dead although seven years may not yet have elapsed since that time." (1 Elliott on Evidence, § 112.)

2 Wharton on Evidence, section 1277, states the same principle.

It is concluded that the instruction is in accordance with the opinions in the Tudor and Gerdom cases and the weight of authority upon this question.

But it is argued that the facts of this case do not warrant the application of the principle. It is also said that the negative evidence of the defendant, showing the absence of Caldwell's name from hospital and cemetery records and the register of deaths, rebuts any inference that he died at Stockton. The absence of his name from these records, while competent evidence, is not conclusive of the fact. It is by no means certain that other pesthouses were not provided in or near the city. The cross-examination shows that there was a large sanatorium there, although not within the city limits, concerning which no records were produced. The cemetery records were only those of the three principal cemeteries. Considering the nature and progress of the disease, the patient having suffered a relapse, that temporary provisions in the way of pest-

house accommodations, burial and the like are often resorted to in such cases, the lapse of time and all the attendant circumstances, a question of fact was fairly presented by the evidence upon this branch of the case also, and the general finding for the plaintiff can not be disturbed.

Some minor rulings are complained of, but no error is found affecting substantial rights.

The judgment is affirmed.