Marquet v. Insurance Co.

## MARQUET *v.* AETNA LIFE INS. CO.*

## (*Knoxville.* September Term, 1913.)

1. **INSURANCE.** Insurable interest. Date of termination.

Where a life insurance policy for a term of ten years provided that at the expiration of the term a new policy for an equal amount would be issued without medical re-examination, subject to the premium for the age then attained by insured, providing the expiring policy was returned to the company, and that the surplus under the expiring policy would be applied to reduce the premium on the new policy to the rate charged in the first policy, a rider attached to the policy at the expiration of the term, providing that, the surplus having been found sufficient to reduce the premium during the ensuing term of ten years to the amount named as premium in the policy, it was unnecessary to return the policy for the issue of a new policy until the expiration of ten years from the date of the rider, provided the premium was paid and that all the other conditions, provisions, and requirements of the policy continued in force, extended the obligations of the company for an additional ten-year term, and made the original policy operative for twenty instead of ten years, and therefore the beneficiary's insurable interest was to be tested as of the date of the original contract and not as of the date of the rider. (*Post, pp.* 218, 219, 220.)

Case cited and approved: First Nat'l Bank v. Guaranty Co., 110 Tenn., 25.

---

*As to the wife's right to insure the life of her husband, see note in 53 L. R. A., 817.

On the question of the power of insured to destroy rights of beneficiary, see note in 49 L. R. A., 737.

The authorities on the question of the presumption as to death of former spouse, are treated in notes in 14 L. R. A., 542, and 16 L. R. A. (N. S.), 105. And upon the necessity of inquiry to raise presumption of death from seven years' absence, see notes in 2 L. R. A. (N. S.), 809, and 28 L. R. A. (N. S.), 178.

Case cited and disapproved: Life Insurance Co. v. Galbraith, 115 Tenn., 471.

2. INSURANCE. Insurable interest. Husband and wife.

A husband and wife have each a reciprocal insurable interest in the life of the other. (*Post*, *p*. 222.)

Case cited and approved: Conn. Mutual Life Ins. Co. v. Schaefer, 94 U. S., 457.

3. INSURANCE. Construction. Rights of beneficiaries.

Where a life insurance policy was made payable to insured's wife, or in the event of her death before that of insured to his heirs, executors, administrators, or assigns, her rights were so far vested that they could not, during her life, be divested without her consent. (*Post*, *p*. 222.)

Cases cited and approved: Gosling v. Caldwell, 69 Tenn., 455; Trust Co. v. Bank, 123 Tenn., 625.

4. INSURANCE. Proceeds. Wife's separate estate.

Where an insurance policy was made payable to insured's wife, delivered to her, and she paid the premiums thereon, this was a settlement by the husband upon the wife, and created in her a separate estate. and the company therefore properly treated her as having the sole right of disposition of the surplus created by the premiums. (*Post*, *pp*. 222, 223.)

Case cited and approved: Hughey v. Warner, 124 Tenn., 726.

5. INSURANCE. Insurable interest. Necessity.

A lack of insurable interest by the beneficiary in the life of the insured, where the insurance is taken out and paid for by the beneficiary as a speculation, vitiates the contract, especially in view of Acts, 1895, ch. 160, sec. 2, as amended by Acts 1899, ch. 31, defining a contract of insurance as an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the insured upon the destruction or injury, loss or damage, of something in which the other party had an insurable interest, and Shannon's Code, sec. 3159, providing that all contracts founded in

whole or in part on a gambling or wagering consideration shall be void to the extent of such consideration. (*Post, p.* 223.)

Cases cited and approved:    Bendet v. Ellis, 120 Tenn., 277; Conn. Mutual Life Ins. Co. v. Schaefer, 94 U. S., 457.

Code cited and construed:    Sec. 3159 (S.).

6. **INSURANCE.    Insurable interest.    Husband and wife. Effect of divorce.**

A life insurance contract naming insured's wife as beneficiary, was not invalidated by the subsequent divorce of the husband and wife. (*Post, p.* 224.)

Cases cited and approved:    Conn. Mutual Life Ins. Co. v. Schaefer, 94 U. S., 457; Snyder v. Mystic Circle, 122 Tenn., 248.

7. **DEATH.    Presumption from absence.**

Where a wife procured a divorce and the decree enjoined the husband from attempting to have any relations with her or the minor children, and he thereafter left C., where his wife and children resided, and for some time resided in O., which place he subsequently left, evidence that he had not been heard from in C. by any member of his immediate family or others for seven years, with no evidence as to any inquiry made concerning him at O., his last known place of residence, was insufficient to raise a presumption of death. (*Post, pp.* 225, 226, 227.)

8. **EVIDENCE.    "Presumption."    What constitutes.**

A "presumption" is a conclusion reached by means of the weight of proven circumstances, and before it can exist the circumstances which attend must be in evidence. (*Post, p.* 225.)

Cases cited and approved:    Dunlap v. State, 126 Tenn., 415; Davie v. Briggs, 97 U. S., 628; Renard v. Bennett, 76 Kan., 854; Modern Woodmen of America v. Gerdom, 72 Kan., 391; Miller v. Sovereign Camp Woodmen of the World, 140 Wis., 505; Hansen v. Owens, 132 Ga., 652; Hitz v. Ahlgren, 170 Ill., 63; Puckett v. State, 33 Tenn., 356; Shown v. McMackin, 77 Tenn., 601; Bank v. White, 114 Tenn., 73, 84.

9. **EVIDENCE.** Circumstantial evidence. Weight and sufficiency.

Proof of an essential fact must be had either direct or positive by witnesses who know the fact, or circumstantial by witnesses who know and testify to facts which tend to establish or prove the essential fact, and only when the circumstances are, in the judgment of the court or jury, such as usually or necessarily attend the essential fact are they sufficient in law to warrant a verdict; judgment or decree establishing a fact which has not been proved by direct or positive evidence. (*Post,* p. 225.)

FROM HAMILTON.

Appeal from Chancery Court, Hamilton County.— T. M. McCONNELL, Chancellor.

PRITCHARD, ALLISON & LYNCH, for appelant.

SIZER, CHAMBLISS & CHAMBLISS, for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This suit is based upon an insurance contract. The breach relied on is the failure to pay $2,000, the amount of the policy, upon proofs of death of the insured.

The defenses are two: First, that the payee or beneficiary in the policy sued on, at the date of its issuance, had no insurable interest in the life of the insured, and the contract sued on is therefore a wagering one and unenforceable; second, that the proofs

do not show the death of the insured, and therefore no breach is shown justifying a recovery.

There was a decree below for $2,132.50 and costs, from which the insurance company appealed, and has here assigned errors based on the defenses above.

At the time of the issuance of the policy sued on, complainant was the lawful wife of Gus Marquet, and his was the life insured. The policy was issued April 7, 1893, and soon thereafter it was delivered to complainant, who paid all premiums which became due upon it after its issuance. Three years and over after its issuance on, to wit, April 21, 1898, at the suit of complainant, she was granted an absolute divorce from Gus Marquet by the chancery court of Hamilton county upon the ground of habitual drunkneness by Gus Marquet after his marriage to her, failure by him to provide for her and her children by him, etc. There followed an entire estrangement between Gus Marquet and complainant and her children. The latter were two sons, respectively, about twenty-one and twenty years of age, and a daughter about eighteen years old at the time of the divorce. The children were in sympathy with the mother in that suit.

Prior to the divorce, for many years, the home of the family and of Gus Marquet had been in Chattanooga, Tenn., but soon after the divorce, or during the years 1898 or 1899, he left Chattanooga, and took up his residence at Oakdale, Tenn., where he remained until about the year 1900, when he left Oakdale for a trip to New Orleans, and has not, as complainant in-

sists, been. heard from directly since that time, except through a letter supposed to have been from him, addressed to one of his nephews residing in Chattanooga in the year 1904. By one rumor he is said to have been seen in Detroit, Mich., by another in Memphis, Tenn., but the persons said to have seen him are not examined as witnesses; nor do the dates appear when they claim to have seen him.

The policy in suit, by its terms, was to live for a period of ten years from its date, in consideration of a fixed semiannual premium to be paid the company. But it provided that at its expiration it might be renewed by the issuance of a new policy, as follows:

"Sec. 2. At the expiration of the term of ten years under this policy and others of a similar form which may be issued to succeed it, said company will issue a new one of an equal amount without medical re-examination, subject to the premium for the age then attained by the insured, providing such expiring policy is returned to the office of the company for this purpose before its expiration, and the surplus under the latter will be applied toward reducing the premium in the new one to the rate charged in the first policy; but, should such surplus be insufficient to reduce the premium to said rate, it shall be optional with the insured to pay the premium required for the said new policy after the surplus from the expiring one has been applied, or reduce the amount of the insurance and continue previous payments. The said new policy will be dated and the first premium there-

on become due at the expiration of the term of the last preceding policy, and will be written for a term of ten years from such date, unless the insured has attained the age of seventy, in which case the new policy will be written for the remainder of life."

The policy sued on was never renewed by the issuance of a new one, as provided by section 2 above set out, but on the last day of its life as originally written, its life was prolonged or extended by agreement between complainant and the company by attaching to the policy sued on and originally issued what is called a "rider" signed by one of the officers of the company, thereunto authorized in the following words and figures:

"Form No. 222.

"M. G. Burkeley, Pres.

"J. L. English,            H. W. St. John,
    Secy.                 Actuary.

"Frank Bushnell,          C. E. Gilbert,
    Agency Secy.          Ass't Sec'y.

"Aetna Life Insurance Company.

"Hartford, Conn., April 7, 1903.

"Renewable-Term Policy No. 216,338, issued by the Aetna Life Insurance Company, on the life of Gus Marquet, having this day completed a term of ten years, and the surplus existing under it having been found sufficient to reduce the tabular premium for the present age during the ensuing term of ten years to the amount named as premium in said policy, there-

fore it is unnecessary to return said policy for the issue of a new policy until the expiration of ten years from the date of this instrument, provided the premium expressed in said policy continues to be paid in each and every year before five o'clock p. m. of the days therein named for such payment, and that all the other conditions, provisions, and requirements of said policy continue in force.

"J. L. English, Secretary.

"Nash."

If there had been a renewal under section 2, the old policy would have been returned to the office of the company before its expiration, to the end that the company might issue a new one. This was not done. Complainant retained the old policy, and the company sent the rider to be attached to the old policy. Moreover, by the plain terms of the rider, the company waives the return of the old policy, and prolongs its life, or makes it the measure of rights between complainant and the company for ten years from the date when it would otherwise have expired. The legal effect of the rider was to make the original policy operative for twenty instead of ten years from its date.

A question much similar in some respects to the one here was presented to this court in *First National Bank* v. *Guaranty Co.*, 110 Tenn., 25, 75 S. W., 1080, 100 Am. St. Rep., 765, where it was said:

"Now, it is true that the renewal certificate is a new contract, but it is only a new contract as respects time; that is to say, it extends the indemnity provided

by the old contract to a new period of time—May 1, 1899, to May 1, 1900. The parties themselves understood there was only one bond and one penalty."

The question in the present case is clearly distinguishable from that presented to the court in *Life Insurance Co.* v. *Galbraith,* 115 Tenn., 471, 91 S. W., 204. There the insurance company defended upon the ground that the insured had made fraudulent misrepresentations in respect of his health, in an application to the company to reinstate a policy which had lapsed on account of his failure to pay a premium, and this court held:

"By his failure to comply with the condition upon which it could be kept alive he has *ipso facto* forfeited all rights under the policy. As to him, it is as if it had never been written. If any benefit accrue to him therefrom, it must be revitalized, and this can be done only with the consent of the company. When it is done, then it becomes a new assurance—a new contract —as if the policy then was for the first time issued," etc.

But in the present case, there was no forfeiture during the first ten years of the policy sued on. All the premiums called for by it were paid at maturity; and out of these a surplus was created in favor of the beneficiary sufficient to reduce the premium required by the company during the second term of ten years, even considering the ten years increase in the age of the insured, to the same amount, semiannually, as was required during the first ten-year period.

Upon the issuance of the policy for the first ten-year period, the complainant, then being the wife of the insured, had an insurable interest in his life. Husband and wife, beyond all question under the authorities, have each a reciprocal insurable interest in the life of the other. *Conn. Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S., 457, 24 L. Ed., 251; Cooley's Briefs on the Law of Insurance, 185, and cases cited.

The policy as originally issued was payable to complainant, or, in the event of her death before that of the insured, to his heirs, executors, administrators, or assigns; and, under it, her rights were so far vested that they could not, during her life, be divested without her consent. *Gosling* v. *Caldwell*, 69 Tenn. (1 Lea), 455, 27 Am. Rep., 774; *Trust Co.* v. *Bank*, 123 Tenn., 625, 134 S. W., 311.

Though the insurance evidenced by the policy had been originally accomplished by a contract between the company and Gus Marquet, yet it is clear upon this record that he, she, and the company regarded that transaction as a settlement upon his wife of the proceeds of that contract whatsoever they might be, for he delivered the policy to his wife; she paid the premiums upon it; and the company, with knowledge of the facts, by the extension contract, treated with and recognized her as having the sole *jus disponendi* of the surplus which had been created by the payments she had made during the first ten-year term. The company was clearly well warranted in so treating with her. The contract was a settlement by the hus-

band upon the wife, and created in her a separate estate. *Hughey* v. *Warner*, 124 Tenn., 726, 140 S. W., 1058, 37 L. R. A. (N. S.), 582, and cases there cited.

The policy covering the first ten years was not extinct or discharged so far as the company was concerned after expiration of that period until some arrangement was made satisfactory to the complainant respecting her rights in the surplus aforesaid; and, by the execution of the rider that arrangement was effected by extending the obligations of the company for an additional ten-year term. The rider did not renew a dead contract; it only extended the time for the performance of a living one.

It is true, as insisted by the company, that the rule is well established that a lack of insurable interest by the beneficiary in the life of the insured, where the insurance is taken out and paid for by the beneficiary as a speculation, vitiates the contract. In such case the contract creates the sole interest of the beneficiary in the life insured. He has nothing at stake except the premiums he pays under the policy. All such contracts are wagering pure and simple. *Bendet* v. *Ellis*, 120 Tenn., 277, 111 S. W., 795, 18 L. R. A. (N. S.), 114, 127 Am. St. Rep., 1000; *Conn. Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S., 457, 24 L. Ed., 251; Cooley's Briefs, supra, vol. 1, pp. 246, 247-249, and cases cited.

Section 2 of our Act of 1895, chapter 160, as amended by Act of 1899, chapter 31, defines a contract of insurance to be an "agreement by which one party, for a consideration, promises to pay money or its equiv-

alent, or to do some act of value to the assured, upon the destruction or injury, loss or damage of something in which the other party had an insurable interest." See, also section 3159, Shan. Code.

But the insurable interest of the complainant in the life of Gus Marquet is not to be tested as of the date of the rider, but as of the date of original contract, because that contract was never discharged, but was extended in the time for its performance while executory, and, tested as of the former time, her interest in his life was that of a wife, and clearly insurable, as we have seen. The divorce did not invalidate the pre-existing valid contract of insurance. *Conn. Mutual Life Ins. Co.* v. *Schaefer*, supra; *Snyder* v. *Mystic Circle*, 122 Tenn., 248, 122 S. W., 981.

The first assignment of error based on the first defense above stated, is therefore overruled.

The second assignment of error, based on the second defense above, is that the court was in error in decreeing complainant a recovery of the amount of the policy sued on, because the evidence in this case does not justify the presumption in law that Gus Marquet was dead when this suit began.

"Positive proof is always required where, from the nature of the case, it appears it might possibly have been had. But next to positive proof, circumstantial evidence, or the doctrine of presumption, must take place, for where the fact itself cannot be demonstratively evinced, that which comes nearest to the proof of the fact is the proof of such circumstances

which either necessarily or usually attend such facts, and these are called presumptions, which are only to be relied on until the contrary be actually proved. '*Stabitur praesumptio donec probetur in contrarium.*' Violent presumption is many times equal to full proof, for there those circumstances appear which necessarily attend the fact.'' Blackstone, vol. 2, book 3, sec. 371.

Presumption is no magic or shortcut way by which proof of the essential and determinative fact may be dispensed with, for we see from the above quotation that ''positive proof is always required where, from the nature of the case, it appears that it might possibly have been had.'' And, evidently, by the next sentence in the quotation, it is meant to be said that a presumption is only a name for a conclusion reached by means of the weight of proven circumstances; and, before a presumption can exist, the circumstances which attend must be in evidence. Proof of the essential fact must be had, either direct or positive by witnesses who know the fact, or circumstantial by witnesses who know and testify to facts which tend to establish or prove the essential fact; and only when the circumstances are, in the judgment of the court or jury, such as usually or necessarily attend the essential fact are they sufficient in law to warrant a verdict, judgment, or decree establishing as a fact that which has not been proved by direct or positive evidence. This principle was applied by us in *Dunlap* v. *State*, 126 Tenn., 415, 150 S. W., 86.

128 Tenn. 15

The essential fact in the present case is the death of Gus Marquet. Upon satisfactory proof of his death, the contract sued on binds the insurance company to pay. There is no direct or positive proof of his death, no witness who testifies that he saw him die, or that he saw his body after death. It is then clearly a case where proof of the essential fact must be made by circumstantial evidence.

The main insistence for the complainant is that, under the proof offered by her in this record, a presumption that Gus Marquet is dead arises.

"The general rule undoubtedly is that 'a person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard from without assuming his death.'" Davie v. Briggs, 97 U. S., 628, 24 L. Ed., 1088, and authorities there cited.

"It is necessary that the person as to whose death it is sought to raise a presumption shall have been absent from his home or the place where he has established a residence. Thus, where a person has changed his residence from one State or country to another, the fact that he has not been heard of in the place of his former residence for seven years raises no presumption of his death, at least in the absence of evidence that inquiries have been made for him at his last known place of residence without success; and the mere absence of a person from the place where his

relatives reside, but which is not his place of residence, and the fact that his relatives have not received letters from him for seven years, does not raise any presumption of his death.'' Cyc., vol. 13, 300.

''The inference of death to be derived from unexplained absence is, at most, only a presumption, and it cannot arise unless the absence remains unexplained after diligent inquiry is made of the persons and at the places where tidings of the absentee, if living, would most probably be had.'' *Renard* v. *Bennett*, 76 Kan., 854, 93 Pac., 263, 14 Ann. Cas., 240, and authorities cited.

''According to the weight of modern authority, diligent inquiry among friends and relatives, and any others who would probably hear of an absentee, is necessary to raise a presumption of the latter's death, after an unexplained absence of seven years from home or place of residence.'' *Modern Woodmen of America* v. *Gerdom*, 72 Kan., 391, 82 Pac., 1100, 2 L. R. A. (N. S.), 809-812; *Miller* v. *Sovereign Camp Woodmen of the World*, 140 Wis., 505, 122 N. W., 1126, 28 L. R. A. (N. S.), 178, 133 Am. St. Rep., 1095.

''Mere absence is not sufficient to raise the presumption. . . . Evidence of absence from his original place of residence will not raise the presumption of death, where it appears that he has moved to another place.'' *Hansen* v. *Owens*, 132 Ga., 652, 64 S. E., 800; *Wentworth* v. *Wentworth*, 71 Me., 74.

''But the presumption of death at the expiration of seven years from being last heard of does not arise

where it is improbable that the absentee, even if alive, would or could have been heard of at, or would or could have communicated with, his residence, home. or domicile." Lawson's Law of Presumptive Evidence, p. 251; *Hitz* v. *Ahlgren*, 170 Ill., 63, 48 N. E., 1068, and authorities cited.

"The rule as to the presumption of the death of a person after seven years' absence was not correctly stated in the charge of the court. This presumption of law, independent of the verdict of the jury upon the facts, does not attach, unless it appears that the person has been absent from his domicile, or last place of residence, without intelligence concerning him for the period of seven years, though a jury may find the fact of death, if the circumstances of the case concur, from the lapse of a shorter period than the seven years." *Puckett* v. *State,* 1 Sneed (33 Tenn.), 356.

"Obviously, the courts should be cautious in acting upon the presumption alone, and, as a general rule, diligent inquiry at the place where the party was last heard from should be required." *Shown* v. *McMackin,* 9 Lea (77 Tenn.), 601, 42 Am. Rep., 680.

According to the averment in complainant's bill, and her proof, it is clear that Chattanooga ceased to be the residence place of Gus Marquet on or about the years 1898 or 1899, at which time Oakdale, Tenn., became his residence place, which he left about the year 1900, with the statement that he intended to take a trip to New Orleans. A letter supposed to be from him was received in 1904 by one of his nephews re-

Marquet v. Insurance Co.

siding in Chattanooga. What domicile or place of residence he established after he left Oakdale does not appear, but clearly the latter place was his last known place of residence. This record fails to disclose any inquiry whatsoever made by her at Oakdale, Tenn., relative to the whereabouts of Gus Marquet. The mere fact that he has not been heard from in Chattanooga, either by any member of his immediate family or others within the past seven years, is of little weight when considered in connection with the complete estrangement between himself and the complainant and his children, resulting from the divorce proceedings. He was enjoined by solemn decree of the court from attempting to have any relations with complainant or with his minor children. All of the children of this unfortunate marriage are shown to have sympathized with the mother in the divorce proceedings, and the father during the seven years of unexplained absence was an outcast from his family.

The complainant calls as witnesses none of the collateral relatives of Gus Marquet who resided in Chattanooga. Her sole evidence to establish the presumption of death in this case is made by herself and her son, W. L. Marquet, who, as shown by the divorce bill, had refused to reside under the same roof with his father before the bill was filed.

Without going into the evidence touching inquiries made by the complainant in further detail, it suffices to say that, in our opinion, the evidence here does not warrant a finding that Gus Marquet was dead when

this bill was filed.    Complainant testified that he was, up to the time she last saw him, always in good health, and that she had never known him to be sick as much as one day.    His application for the original policy shows that he was born in France on the 8th day of October, 1855.

Wherefore the decree appealed from must be reversed.    We think that we can see from this record that justice will in all probability be done by remanding this cause, with leave to each side to take further proof, and it is so ordered.    *Bank* v. *White,* 114 Tenn., 73, 84 S. W., 697.