No. 29,640.

C. G. Bertholf et al., *Appellants*, v. Milton Porter Cornel et al., *Appellees.*

(294 Pac. 673.)

Opinion filed January 10, 1931.

*S. S. Alexander,* of Kingman, for the appellants.

*P. D. Gardner* and *O. W. Helsel,* both of Wichita, for the appellees.

The opinion of the court was delivered by

Marshall, J.: The action is brought by the plaintiffs, collateral heirs at law of Horace E. Porter, to set aside two deeds by Horace E. Porter conveying real property to Milton Porter Cornel and his wife, Martha Ellen Cornel, and to establish the ownership of the plaintiffs in and to their proportionate shares of the real property in controversy as against all of the defendants who are likewise collateral heirs at law of Horace E. Porter. Judgment was rendered in favor of the defendants, Milton Porter Cornel and his wife, Martha Ellen Cornel. The plaintiffs appeal.

The action was tried without a jury. Findings of fact and conclusions of law were made. Those findings show that Horace E. Porter homesteaded and received a patent from the government for the land in controversy, on which he lived until the time of his death; and that Samuel Porter and Esther Mahala Porter were the father and mother of Horace E. Porter.

Other findings were as follows:

"Six. Sometime in the year 1889, and subsequent to the death of Samuel Porter and Esther Mahala Porter, Horace E. Porter made an oral contract

with Milton Porter Cornel by which Horace E. Porter promised Milton Porter Cornel that if Milton Porter Cornel would stay on the farm in question and make a home for Horace E. Porter as long as he lived, when he was done with the farm he would leave it to Milton Porter Cornel. Milton Porter Cornel agreed to this contract by performing all of its provisions on his part to be performed.

"Seven. In pursuance and fulfillment of said oral agreement the said Milton Porter Cornel stayed on said land, assisted in farming the same and maintaining a home for said Horace E. Porter up to the time of the death of Horace E. Porter, a period of about thirty-nine years. Likewise, Martha Ellen Porter [Cornel] remained upon said place during all of said time, and assisted in maintaining a home and farming the place for Horace E. Porter. In addition to performing the household duties, such as washing and cooking for the hired help and the members of the family, the said Martha Ellen Porter frequently did manual labor in the field, such as pitching hay, shucking corn, and other work of like character incident to the operation of a farm.

"Eight. The oral contract is a valid contract and was in all respects faithfully performed by Milton Porter Cornel, with the aid and assistance of his wife, Martha Ellen Cornel. At all times the relationship between Horace E. Porter and Milton Porter Cornel and Martha Ellen Cornel was friendly, intimate and cordial. Horace E. Porter felt most kindly disposed toward Milton Porter Cornel and Martha Ellen Cornel, and frequently expressed his satisfaction with, and appreciation of, their help and their many years of service and associations. He told his friends that they were always good to him and that it was his intent and purpose that Milton Porter Cornel have the place. Upon several occasions he stated that the place would be Milt's. In talking with Wallace Goodrich about the disposition of his property, Horace E. Porter said: 'When I die, I am going to leave him (Milton Porter Cornel) my property. . . . I have got it all fixed.'

"Nine. Horace E. Porter was not kindly disposed toward the Bertholf children, and felt and expressed a disinclination that they should ever receive any of his property. He stated on numerous occasions that he had it arranged that Milton Porter Cornel should receive all of his property.

"Ten. On April 19, 1922, Horace E. Porter, being then the owner in fee simple of the land involved in this action, at Valley Center, Kan., caused a warranty deed to be prepared, describing said land, wherein H. E. Porter, a single man, was grantor and Milton Porter and Ella Porter were grantees. He thereupon signed and acknowledged the deed before a notary public. He stated to the notary that many years ago he had made an agreement with Milton Porter Cornel and Ella Cornel that if they would remain on the place and make a home for him during his lifetime they would have the farm; that he, Horace E. Porter, was getting old, and felt it was time he was making a deed in pursuance of said agreement.

"Eleven. On July 5, 1924, Horace E. Porter made and executed before a notary public a warranty deed to said land, wherein Milton Porter Cornel and Martha Ellen Cornel were grantees, the deed showing date of April 19, 1922, for the reason that Horace E. Porter instructed the scrivener to draw

the deed as an exact duplicate of the prior deed, with the exception that the grantees be named as Cornel instead of Porter. Martha Ellen Cornel caused the latter deed to be recorded on July 18, 1928, in book 408, at page 311, of the deed records of Sedgwick county, Kansas. The delivery of said deeds was complete, and said deeds are each a valid and subsisting instrument. At all times Horace E. Porter was possessed of his mental faculties and of sound mind and competent to make said deeds.

"Twelve. In the bedroom occupied by Horace E. Porter, long before and at the time of the execution of these deeds, there was a stand with two drawers in it, designated as the upper and lower drawers. The upper drawer was used exclusively by Milton Porter Cornel and Martha Ellen Cornel as a depository for their personal papers, deeds and documents. The lower drawer, together with a bookcase in the attic, was used by Horace E. Porter as a depository for his personal papers, land-tax receipts, personal-tax receipts and other papers. One of the two deeds, described in findings numbered nine and ten, was found in the upper drawer of this stand five hours after the death of Horace E. Porter. How these deeds came into the hands of Mrs. Cornel, no competent evidence shows, but she knew of the existence of them soon after they were signed and acknowledged, and knew that they were in the upper drawer of the stand, and she knew and understood the contents of these two deeds. She removed them from the upper drawer of the stand a few days after the death of Horace E. Porter.

"From the time of the execution of the two deeds, until after the death of Horace E. Porter, Martha Ellen Cornel had possession of them. Although there is no direct evidence of the delivery of these deeds by Horace E. Porter to Martha Ellen Cornel, the court finds from the fact that she had possession of them and from the acts and declarations of Horace E. Porter, and from the evidence in the case, that the two deeds were delivered by Horace E. Porter in his lifetime to Martha Ellen Cornel; and that it was his intention that Milton Porter Cornel and Martha Ellen Cornel should have his land."

Conclusions of law were reached as follows:

"One. The oral contract between Horace E. Porter and Milton Porter Cornel is a valid contract and should be specifically performed or enforced.

"Two. The two deeds from Horace E. Porter to M. C. Porter and Martha Porter, and from H. E. Porter to Milton Porter Cornel and Martha Ellen Cornel, described in these findings of fact, were delivered during the lifetime of Horace E. Porter."

1. The first question argued by the plaintiffs in their brief is as follows: "Were the two deeds in question delivered in the lifetime of Horace E. Porter?" The court found that the deeds had been delivered. The question for determination is: Was there evidence to support that finding?

We quote from the testimony of Martha Ellen Cornel as follows:

"A. Uncle Hod was talking to Milt, and he says, 'Well,' he says, 'won't you stay with me and establish a home for me? Why,' he says, 'if you don't

I will be left all alone,' and he said he was getting old and he didn't care to be left by his self.

"Q. All right, go ahead. A. That's all that was said then, but what Milt said.

"Q. What did Milt say? A. Why, he said he had no objection if he was satisfied with it.

"Q. Then what, if anything, did Uncle Hod say? A. Why, he said he wanted us to stay. . . .

"A. Well, Uncle said that he would stay there and make a home for him as long as he lived; that when he was done with the farm he would leave it to him.

"Q. Leave it to who? A. Milt.

"Q. Now in what year was that conversation? A. Well, that was in '89, 1889.

"Q. 1889. Did Uncle Hod continue to live there with you and Milt, after that? A. Yes, we all lived right there in the house until Uncle died."

We also quote from the evidence of S. L. Gardiner, a banker, who testified—

"That Horace E. Porter came in the bank and wanted a deed made out to Milt and Ella, and said he had had 'an agreement with them that they were to have that place; that he had made the agreement a way back years prior that he was to—they were to get the place if they would take care of him, or if he could live there with them, make a home for him; and he said that he thought it was about time he was making a deed', he was getting pretty old.' Uncle 'Hod' had also said 'he wanted to carry out his end of the bargain' and that he told this witness 'he was going to take it home and give it to Ella.' "

A number of witnesses testified to conversations with Horace E. Porter in which he stated in effect that after his death Milton Porter Cornel would have the property. Five hours after the death of Horace E. Porter the deeds were among the papers belonging to the Cornels. Two days after the death of Horace E. Porter, Martha Ellen Cornel caused the last deed executed before S. L. Gardiner to be recorded. There was evidence which tended to prove that the first of the deeds came into the possession of Martha Ellen Cornel about the time it was made, and that the last deed had been in her possession before Horace E. Porter died.

Summarized, the evidence tended to prove an agreement between Horace E. Porter and Milton Porter Cornel under which Milton Porter Cornel was to have the property after the death of Horace E. Porter; that in pursuance of that agreement deeds were made and signed by Horace E. Porter conveying the property to Milton

Porter Cornel and his wife, Martha Ellen Cornel; that both deeds were delivered to her and were in her possession after the death of Horace E. Porter; and that she caused the last deed to be recorded after his death. The deeds being in her possession, the presumption is that they had been delivered. (*Rohr v. Alexander*, 57 Kan. 381; 46 Pac. 699; *Malaney v. Cameron*, 98 Kan. 620, 159 Pac. 19; *Hoard v. Jones*, 119 Kan. 138, 237 Pac. 888; *Smith v. Dolman*, 120 Kan. 283, 284, 243 Pac. 541.) The evidence was sufficient to sustain the finding of the court that the deeds had been delivered.

2. The plaintiffs complain of the admission of the testimony of Martha Ellen Cornel, which has been quoted, and of other testimony by her to show that, until after the death of Horace E. Porter, the deeds were kept in a stand in the room occupied by him and that the stand had two drawers in it, in the upper one of which Milton Porter Cornel and Martha Ellen Cornel kept their papers and in the lower one of which Horace E. Porter kept his papers. That evidence was objected to on the ground that she was incompetent to testify concerning the matter because it involved a transaction with Horace E. Porter, by which it must have been agreed that the papers should be kept in the manner described.

The statute on which the plaintiffs rely is section 60-2804 of the Revised Statutes, which in part reads:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had ·personally by such party with a deceased person."

This statute should be strictly construed in favor of the competency of the witness. (*Mendenhall v. School District*, 76 Kan. 173, 175, 90 Pac. 773; *Hess v. Hartwig*, 83 Kan. 592, 594, 112 Pac. 99; *Treiber v. McCormick*, 90 Kan. 675, 678, 136 Pac. 268; *Armstrong v. Street Railway Co.*, 93 Kan. 493, 503, 144 Pac. 847.) Martha Ellen Cornel could testify to a conversation had between her husband and Horace E. Porter. (*Harris v. Morrison*, 100 Kan. 157, 163 Pac. 1062; *Wallace v. Wallace*, 101 Kan. 32, 165 Pac. 838; *Gaston v. Clabaugh*, 106 Kan. 160, 186 Pac. 1023; *Robertson v. Wangler*, 107 Kan. 45, 51, 190 Pac. 788.) She did not testify to any transaction or conversation had by her with Horace E. Porter. The fact that the Cornels kept their papers in one drawer of the stand and Horace E. Porter kept his papers in another drawer does not necessarily imply that an arrangement had been made between them

that the papers should be so kept any more than if the Cornels had kept their papers in one bank and Horace E. Porter had kept his papers in another bank. The evidence was admissible.

The judgment is affirmed.