No. 32,678

In re Estate of Maria Johnson (Effie St. Denis, *Appellant*, v. J. K. Johnson, as Executor, etc., *Appellee*).

(54 P. 2d 983)

Opinion filed March 7, 1936.

*Joe T. Rogers, James A. Conly, O. A. Keach* and *John W. Adams,* all of Wichita, for the appellant.

*Arnold C. Todd, Julian E. Ralston, Ralph Gore* and *Kurt Riesen,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action involves the right of a daughter to recover compensation from her mother's estate for services rendered to the mother during her lifetime.

The mother died April 26, 1933. The claim filed in the probate court was disallowed. An appeal was perfected to the district court, and a demurrer was there sustained to the evidence. It reads:

"Under the decision in the case of *Heine versus First Trust Company,* 141 Kan. 370, and other decisions of the supreme court, the court finds that the demurrer should be sustained; that no contract has been proven to the extent required by the decisions, and the demurrer will be generally sustained."

From that ruling claimant appeals. The claim filed, reads:

"364 weeks of labor at $25 per week.................................. $9,100
Claimant began working for deceased on or about December 1, 1925, and worked for deceased until about September 12, 1932, under an agreement that claimant would be paid a reasonable wage at the death of Maria Johnson, which occurred April 26, 1932.
Credit by payment............................................. 300
Balance due ................................................ 8,800"

We deem it unnecessary to decide whether the evidence proved an enforceable contract. Assuming, without deciding, that a valid contract was established, the evidence failed to establish its breach.

Claimant testified concerning statements she heard her mother make to others concerning the alleged contract. She did not relate any conversation she had with the deceased. For the purpose of testifying to a conversation heard, and in which she did not participate, claimant was a competent witness. (*Griffith v. Robertson*, 73 Kan. 666, 85 Pac. 748; *Harris v. Morrison*, 100 Kan. 157, 163 Pac. 1062; *Page v. Sawyer*, 101 Kan. 612, 168 Pac. 878; *Bank v. Abbott*, 104 Kan. 344, 179 Pac. 326; *Sharp v. Losee*, 109 Kan. 211, 199 Pac. 94.)

The total effect of the testimony was, claimant was to be compensated out of her mother's estate. A few extracts from the testimony of claimant and from a few of her witnesses will suffice. They characterize the general nature of the evidence offered in her behalf. Claimant testified:

"It was not at my request that I went to live with my mother. I talked to J. K. Johnson, my mother's husband, shortly before I went to their home with reference to going to the home. There were four (4) of us present at that time; my mother, Mr. Johnson, my fiancé and myself. Johnson said: 'Effie, aren't you ever going to make up your mind to come down home with us?' and before I could answer my mother said: 'Johnson, I have asked Effie not to get married, and take care of me as long as I live, and if she goes down home with me and takes care of me I will pay her and pay her *with a lump sum out of my estate* that will do her some good.'" (Italics inserted.)

"I heard my mother say to Johnson that Effie was to be paid well for her services and that I should be paid in a lump sum so it would do me some good *out of her estate when she was through with it.*" (Italics inserted.)

"She told Robert (claimant's fiancé), that I would be paid well if I came down and took care of her and that I would be paid *out of her estate.*" (Italics inserted.)

"I recall hearing a conversation between my mother and Mrs. McCabe (Robert's mother). My mother and I were returning from a trip to South Dakota, and I stopped on the way home in front of Mrs. McCabe's house. She came out and remarked to my mother how well she was looking and said: 'You sure have a jewel in Effie,' and mama said: 'Effie shall be well paid and taken care of for all she has done for me. She has sacrificed all her life.'"

Robert McCabe testified:

"Mr. Johnson said, 'Effie, if you come down and take care of your mother I will pay you $15 per week,' and Mrs. Johnson spoke up and said, 'And Effie, if you will stay single and not get married then I will see that you are well paid when I am dead and gone *from my estate.*'" (Italics inserted.)

Mrs. Nannie T. McCabe testified that claimant's mother had told her—

"She was going to see that Effie was well paid for what she had done for her. . . . That Effie was to be paid when she was through and when she was done with the property."

Mrs. Lloyd Cook testified she heard claimant's mother say:

"When I am gone Effie is going to be amply repaid for all that she has done for me."

Mrs. C. M. Love testified:

"I heard Mrs. Johnson speak of Effie taking care of her and she said Effie would be well paid for it sometime. I heard her speak of it several times and I suppose it was about between 1929 to 1931. I don't remember whether Mrs. Johnson fixed any time or not that Effie would receive the pay."

This evidence clearly discloses claimant was to be compensated out of her mother's estate. Claimant testified, in July, 1930, she took her mother to a lawyer where she made a new will. She stated, all she knew about the will was what her mother's attorney told her. Claimant did not introduce the will. She further testified she signed the petition for the probate of that will.

The burden rested on claimant to prove the breach of the alleged contract. The testimony shows she was to be paid out of her mother's estate. The only evidence remotely touching the subject of a breach of the contract was claimant's testimony, "That she *has received* nothing from her mother's estate." That is no evidence the will did not provide adequate compensation for services rendered. Without affirmative evidence we cannot assume the will failed to make the provision to which claimant says she is entitled. Nor does this testimony prove she would not receive full compensation under the law of descent and distribution. There is no evidence that at the time of the trial a final order of distribution had been made in her mother's estate. All the evidence disclosed was that she had not yet obtained possession of the compensation claimed. Assuming the evidence established an enforceable contract, it did not disclose a breach of the alleged contract. The judgment must therefore be affirmed. It is so ordered.