No. 40,975

In the Matter of the Estate of Wilbert Carrell, deceased. (HAROLD R. TRAMMELL, II, *Appellant,* v. LILLIAN CARRELL, Administrator, *Appellee.*)

(327 P. 2d 883)

492

Opinion filed July 16, 1958.

*Robert S. Lomax,* of Wichita, argued the cause, and *Fred J. Gasser,* of Wichita, was with him on the briefs for appellant.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Hugo T. Wedell, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum* and *John E. Rees,* all of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The action was one to recover damages for personal injuries sustained in an automobile collision on U. S. Highway No. 85-87, south of Colorado Springs, Colorado. The petition alleged that the claimant, Harold R. Trammell II, was a paying passenger and that the driver, Wilbert Carrell, was guilty of negligence in enumerated particulars. The jury answered a special question, and returned a verdict in favor of the defendant. The claimant has appealed and specifies as error, orders and rulings of the court during the trial and the overruling of his motion for a new trial.

Pertinent portions of claimant's evidence are summarized. Trammell was nineteen years of age, single, and lived with his parents in Wichita. Wilbert Carrell also lived in Wichita. Both were members of the Organized Army Reserve Corps; Trammell was a private and Carrell was a sergeant. A two-week summer encampment was being held at Ft. Carson, Colorado, the latter part of July, 1955, to last until August 6, 1955, and members were allowed to take their own automobiles to camp. Carrell drove his Pontiac and

took Trammell and another passenger, Louis Pennington, with him. On the morning they were to leave for camp Carrell went to Trammell's home about 6:30 a. m. Trammell's mother answered the door and she and Carrell had a conversation in the living room. She asked Carrell if he and her son had made financial arrangements for the trip and Carrell told her they had; Mrs. Trammell asked if he wanted her son to pay him then or after they got to camp and Carrell said it did not make any difference. Mrs. Trammell gave Carrell $10 of Trammell's money which he had previously given to her. Trammell packed his barracks bag and left with Carrell for camp.

On August 6, 1955, prior to leaving camp, members of Trammell's unit went through the pay line. Trammell testified that after the men were paid he saw Pennington give Carrell $10 and heard him say, "Here is your money. We will be going home pretty soon." Sergeant Robert Bell testified that Trammell owed Carrell for his ride back to Wichita; that, as first sergeant, he had complaints about men leaving camp without paying their debts and he took it upon himself to be sure that all the fellows paid their debts before leaving camp by checking with the person he told to pay the debt, or the person to whom the debt was owed, and that he knew Trammell's debt to Carrell was paid before they left for Wichita. Sergeant Bell further testified that he asked Carrell if he could ride back to Wichita with him, and Carrell told him he would charge the standard fee of $10 for one way. For reasons not disclosed by the record Sergeant Bell did not make the return trip with Carrell.

On their way back to Wichita Carrell was driving south on U. S. Highway No. 85-87 which is· a concrete north and south two-lane highway with shoulders about two feet wide; the concrete was dry and the visibility was good. Pennington was in the front seat beside Carrell and Trammell was in the back seat asleep. There was heavy traffic traveling in both directions at a uniform rate of speed. Trammell awakened and saw they were passing cars and heard Pennington say, "Look out, Cookie." (Cookie was Carrell's nickname.) Carrell's Pontiac was then on the left-hand or east side of the highway in the northbound traffic lane; his Pontiac sideswiped a Buick traveling north, and laid 86 feet of skid marks before crashing headon into a Ford which was following the Buick. Carrell was killed, Pennington died later, and Trammell suffered severe physical and mental injuries. A psychiatrist who treated

Trammell testified he was 50 percent mentally deficient in his powers of concentration and was suffering from an anxiety neurosis.

The jury returned a verdict for the defendant, and the special question submitted by the court and the jury's answer read:

"At the time of the collision in question, was Wilbert Carrell transporting Harold R. Trammell II as a paying passenger as defined by the instructions of the court?

"Answer: No."

The principal question presented is whether the trial court erred in denying Trammell's motion for a new trial. As indicated, the accident occurred in Colorado. The action was brought under the Colorado guest statute (Revised Statutes 1953, 13-9-1), similar in purport to our guest statute (G. S. 1949, 8-122b). As previously indicated, Trammell pleaded and attempted to prove he was a paying passenger and that Carrell was guilty of negligence in operating the car, which resulted in injury to him. One of the strongly contested issues at the trial was Trammell's status as a paying passenger.

Trammell contends the trial court erred in restricting his testimony and that of his witnesses concerning payment to Carrell for his ride to Ft. Carson and return to Wichita. The record indicates that his efforts to prove his paying status were extremely restricted and that testimony of other witnesses was met with repeated objections to such extent that, in its highly confusing state, it would seem the jury did not get the full import of that evidence.

Upon direct examination Trammell testified he overheard a conversation between his mother and Carrell in the living room on the morning they left for camp. In response to a question to relate that conversation Trammell stated,

"My mother asked Mr. Carrell what arrangement, what financial arrangement there had been made and he said 'twenty dollars'."

The trial court refused to permit Trammell to relate Carrell's part of the conversation and struck that part of the answer pertaining to what Carrell said. He was, however, permitted to relate his mother's side of the conversation, and testified that she told Carrell she would pay him the $10 for the ride to Ft. Carson and that he saw his mother give Carrell the $10. The trial court erred in not permitting Trammell to testify to the entire conversation. A witness may testify as to conversations between a decedent and a third person. A few of our decisions where this rule was applied are:

*Harris v. Morrison,* 100 Kan. 157, 163 Pac. 1062; *Wallace v. Wallace,* 101 Kan. 32, 165 Pac. 838; *Collins v. Hayden,* 104 Kan. 351, 352, 179, Pac. 308; *Gaston v. Clabaugh,* 106 Kan. 160, 186 Pac. 1023; *Robertson v. Wangler,* 107 Kan. 45, 51, 190 Pac. 788; *Bertholf v. Cornel,* 132 Kan. 122, 126, 294 Pac. 673; *St. Denis v. Johnson,* 143 Kan. 483, 54 P. 2d 983; *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571, and *In re Estate of Wert,* 165 Kan. 49, 51, 52, 193 P. 2d 253. The question did not require Trammell to testify to any transaction or conversation had by him with Carrell relating to the subject matter in issue, *i e.,* whether Trammell was injured as a result of Carrell's tortious conduct. The effect of Carroll's statement to Mrs. Trammell that he and Trammell had made financial arrangements for the trip to Ft. Carson and return and that it was "twenty dollars" would tend to establish a contract of carriage for hire for the round trip and the exclusion of that evidence was prejudicial to Trammell's proof of his status as a paying passenger in Carrell's car. Once it is established that such a contract was entered into between the parties, a presumption arises that it continued to exist until rebutted by evidence to the contrary. A state of facts once shown to exist continues until proved otherwise. (*Insurance Co. v. Ketcham,* 9 Kan. App. 552, 554, 58 Pac. 229; *Murray v. Geiser,* 79 Kan. 326, 328, 99 Pac. 589; *Bank v. Bay,* 90 Kan. 506, 135 Pac. 584; and, *White v. Metropolitan Life Ins. Co.,* 151 Kan. 689, 100 P. 2d 691.) See, also, *Sands v. Van Donge,* 181 Kan. 325, 329, 311 P. 2d 321. Further, assuming, *arguendo,* that such a contract was entered into at Wichita and that Trammell had not paid Carrell the $10 for the return trip, his status as a paying passenger would not be altered since Carrell could have enforced the contract for the unpaid balance.

Error is specified that Trammell was not permitted to reopen his case and amend his petition to conform to the proof. Counsel for Trammell stated he thought the allegations in the petition were sufficiently broad to indicate that Trammell was either a guest or a paying passenger; that if the petition was amended to conform to the proof, Trammell was entitled to an instruction under the Colorado guest statute as to Carrell's willful and wanton negligence. During argument to the trial court upon another point counsel for Trammell stated,

"We don't want to prove wanton and willful negligence. We want to prove he was a paying guest."

The record further shows that at another time counsel for Trammell stated,

"Ordinary negligence is all we have to show."

The admission of attorneys of record bind their clients in all matters relating to the progress and trial of a case. For the purposes of the suit, an admission made by counsel is conclusive; and in subsequent proceedings, or on rehearing, if the court is satisfied that they were really made, they cannot be retracted (*Central Branch U. P. R. Co. v. Shoup*, 28 Kan. 394, 398; *Hoover v. Hoover's Estate*, 104 Kan. 635, 638, 180 Pac. 275). In the instant case the admission of counsel as to the legal theory upon which claimant's case was conducted and was to be submitted to the jury binds Trammell, and the trial court did not err in refusing to permit the petition to be amended, or to give the requested instruction.

Other points are discussed in the briefs but it is unnecessary, in view of the conclusions heretofore announced, that they be discussed and decided. Upon consideration of the record the judgment of the trial court is reversed and the cause is remanded for a new trial.

It is so ordered.